## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:01CV-6-M**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**vs.**

**GEORGE RUDY CUNDIFF and**
**CHRISTOPHER SETH CUNDIFF**                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by the United States to reinstate the suspended portion of the civil penalties and to modify restoration measures [DN 161] and on a motion by Defendants for an extension of time to complete the restoration work ordered by the Court [DN 136].  Fully briefed and argued, these matters are ripe for decision.

### I.  BACKGROUND

In April of 2003, the Court entered summary judgment in favor of the United States holding that Defendants violated Section 301(a) of the Clean Water Act.  After a three-day remedy bench trial, the Court permanently enjoined Defendants from discharging dredged or fill material or any other pollutants into waters of the United States.  The Court imposed a civil penalty of $225,000 but suspended $200,000 pending Defendants' adequate implementation of the United States' restoration plan.  The $25,000 was ordered to be paid over five years.  Defendants appealed this judgment to the Sixth Circuit Court of Appeals.  By agreement of the parties, this case was recently remanded to this Court for consideration

of whether the wetlands at issue are "waters of the United States" as defined by the United States Supreme Court in Rapanos v. United States.  The Court addressed this issue in a separate Memorandum Opinion entered this same day.

In October of 2006, the Court stayed Defendants' obligations to perform the remedial work pending the Court's decision on whether the Corps retained jurisdiction over the Cundiff wetlands in light of the decision in Rapanos.  According to the United States, on October 25, 2006, during an inspection of the Site, the EPA discovered that the Defendants had engaged in recent landclearing, ditching, filling, and sidecasting activities that further damaged the function of the wetlands.  The United States presented evidence at the hearing that EPA officials had witnessed and documented the following activities – all of which occurred after the entry of the judgment against the Defendants in January of 2005:

1.  Construction of an elevated road that acts like a dam at the western ditch on the Northern Tract that blocks the natural flow of acidic water onto the Northern Tract;

2.  Breach of the south bank of Caney Creek causing acidic water and sediment to flow into Caney Creek;

3.  Evidence of filling activities in the wetlands along the northern edge of the Northern Tract, just south of Caney Creek;

4.  Evidence of mechanized landclearing and filling activities in the wetlands in the eastern portion of the Southern Tract;

5.  A new 1,800 foot long ditch that extends the entire north/south length of the Southern Tract and connects with a 36-inch iron culvert that allows water to flow into a large east-west ditch and then flow directly into Pond Creek;

6.  Failure to cut the three-foot wide breaches in the existing ditch on the Southern tract, but rather the filling of the ditch without authorization;

7.  Failure to plant all the trees required; and

8.  Failure to hire a certified wetlands scientist or ecologist and failure to submit an initial monitoring report.

(Wylie Declaration at ¶ 4 – ¶ 32.)

2

Essentially, due to these actions, the United States requests two separate forms of relief: (1) To the extent that the Defendants did not implement the restoration plan or attempted to undermine its effectiveness, the United States seeks reinstatement of the $200,000 portion of the civil penalty and (2) the United States requests the imposition of new restoration measures to account for the changed conditions at the site.

## II. CIVIL PENALTY

Michael M. Wylie, Wetlands Enforcement Expert for Region 4 of the EPA, and other environmental experts participated in an inspection of the Cundiff site on October 25, 2006. Mr. Wylie stated that during his site visit, he found that Defendants had not adequately implemented certain aspects of the wetland restoration plan ordered by the Court on January 10, 2005.  In addition to the deficiencies, Mr. Wylie stated that he witnessed evidence that the Defendants had engaged in recent landclearing, filling, sidecasting and ditch activity at the site.   Those activities have been identified above.

In the original Findings of Fact and Conclusions of Law, the Court suspended $200,000 of the $225,000 civil penalty "provided that Cundiff adequately implements the restoration plan." (January 10, 2005, Findings of Fact and Conclusions of Law at 14.)  The United States argues that in light of Mr. Cundiff's history of noncompliance and the significant violations described above, the $200,000 suspended portion of the civil penalty should be reinstated.  In fact, the United States argues that the Court should consider increasing the total amount of penalty in light of Mr. Cundiff's defiant attitude toward the Court.

3

In response, Mr. Rudy Cundiff testified regarding the challenged activities.  For example, Mr. Cundiff testified that he constructed the new ditch in the southern tract of the site to insure that the newly planted trees would live.  Defendant called Mr. Ricky Harrell, Kentucky Division of Forestry, who confirmed that if the newly planted tree seedlings were under water for 10 to 14 days, they would die.  Additionally, Mr. Cundiff testified that he had invested $100,000 in restoration measures and had limited funds to accomplish the remainder of the required work.

After reviewing the testimony of Mr. Rudy Cundiff, along with the experts presented by the United States, the Court finds that while Mr. Cundiff has not successfully complied with all the provisions of the restoration plan, Mr. Cundiff's actions do not appear to warrant reinstatement of the suspended civil penalties.  First, the Court finds that Mr. Cundiff lacks the financial resources to pay an additional penalty.  Second, and most importantly,  Mr. Cundiff's actions do not appear to be defiant as argued by the United States.  Instead, Mr. Cundiff appears to not completely understand the actions necessary to complete the restoration plan.  For these reasons, the Court denies the motion by the United States to reinstate the suspended portion of the civil penalty.

### III. MODIFICATION OF THE RESTORATION PLAN

In light of the Defendants' newly unauthorized activities, the United States proposes additional remedial measures designed to restore the wetland functions that have been further diminished at the site. (Wylie Declaration at ¶ 4.)  However, unlike the previous restoration plan, the United States proposes to require Defendants to hire a professional engineer to

design and install (1) a series of low water dips and culverts along the restored area of the Western Ditch (Ditch #1) and (2) two gated water control structures in the ditch leading to Pond Creek.  The United States argues that in light of the Cundiffs' prior behavior, the Defendants should not be trusted to construct and install these structures.  Additionally, the United States requests the Court to enforce the provision in the original restoration plan requiring the Defendants to hire a professional wetland scientist or similarly qualified ecologist to monitor the restoration of the site.

First, the Court disagrees with the United States' characterization of Mr. Cundiff's actions as defiant or as an attempt to undermine the restoration plan.  While the Court agrees that some of the restoration actions implemented by Mr. Cundiff fell outside the restoration plan, the Court finds that these recent actions were undertaken by Mr. Cundiff with the intent to conform to the plan.

Second, while the Court believes that the Government's proposed modifications to the restoration plan will restore the wetland functions to the Cundiff site, the difficulty encountered in this case is that the Cundiffs do not have the financial resources to implement the current modified restoration plan.  In order to accomplish the modified restoration plan, the Cundiffs would have to hire an engineer to design and install (1) a series of low water dips and culverts along the Western Ditch and (2) two gated water control structures which the plan states are "constructed of poured concrete wing walls with gate valves that can be tagged and locked." (Proposed Order at 2.)  This proposal appears to be a very expensive restoration measure designed to restore the water flow at the Western Ditch.

5

Ultimately, the goal in this matter is the restoration of the wetlands.  The Court is confident that the Government can propose a less costly restoration measure that restores the free flow of water from west to east across the Western Ditch and one that can be accomplished by the Cundiffs themselves.  Furthermore, the Cundiffs do not have the ability to hire a professional wetland scientist to monitor the restoration of the site and the Court declines to enforce this provision in the original restoration plan.

Essentially, due to the Cundiffs' limited financial resources, the restoration measures proposed by the United States must be able to be accomplished by the Cundiffs doing the work themselves.  The success of the restoration plan is contingent upon open lines of communication between the parties and oversight of the Defendants' activities by the EPA and the Kentucky Division of Water.  Cundiff needs to be able to communicate with someone when he is doing the work who can give him answers.  He needs to be told immediately when his work is unacceptable and that it needs to be re-done.  This will require more oversight by the EPA and the Division of Water than perhaps is customary, however, the Court sees no other solution.

## IV.  CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** as follows:

1.    The motion by the United States to reinstate the suspended portion of the civil penalty [DN 161] is **denied**.

2.    The motion by the Defendant for an extension of time to complete the restoration plan [DN 136] is **granted**.

3.    The motion by the United States to modify the restoration measures [DN 161] is **granted in part.  No later than April 16, 2007,** the Government shall submit an amended modified restoration plan consistent with this Opinion and a proposed order reflecting the compliance dates for the completion of the modified restoration plan.

cc: counsel of record