## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:01CV-6-M**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**vs.**

**GEORGE RUDY CUNDIFF and**
**CHRISTOPHER SETH CUNDIFF**                                        **DEFENDANTS**

### MEMORANDUM OPINION

As directed, the United States submitted an amended modified restoration plan and a proposed order reflecting new compliance dates for the completion of the restoration plan [DN 175]. The Defendants filed objections to the amended modified restoration plan [DN 177]. The United States filed a reply [DN 179]. For the reasons set forth below, the Court adopts the amended modified restoration plan and proposed order tendered by the United States.

### BACKGROUND

In December of 2006, the Government filed a motion to reinstate the suspended portion of the civil penalties and to modify restoration measures based upon newly unauthorized landclearing, ditching, filling and sidecasting activities at the Cundiff site [DN 161]. On January 25, 2007, the Court conducted an evidentiary hearing. At the hearing and in their briefs, the Defendants argued that the activities undertaken by Mr. Cundiff were an attempt to comply with the restoration plan and to ensure the viability of the newly planted

trees.  Additionally, the Defendants argued that they were financially unable to hire outside experts to complete the restoration plan as proposed in the modified restoration plan.

By Memorandum Opinion and Order entered March 29, 2007, the Court denied the motion by the United States to reinstate the suspended portion of the civil penalty.  The Court found that while Mr. Cundiff had not successfully complied with all the provisions of the restoration plan, his actions did not appear to be defiant as argued by the United States. Additionally, in light of the Defendants' newly unauthorized activities, the Court granted in part the United States' request for a modified restoration plan.  However, the Court found that the Cundiffs did not have the financial resources to hire an engineer, a professional wetland scientist or qualified ecologist to implement the proposed modified restoration measures.  As a result, the Court ordered the Government to file an amended modified restoration plan essentially removing those requirements and to file a proposed order reflecting new compliance dates for the completion of the restoration plan.

## DISCUSSION

On April 16, 2007, the United States tendered the amended modified restoration plan. On April 26, 2007, Defendants filed a response and objections to the restoration plan. Specifically, Defendants argue that the additional remedial measures proposed by the United States are too expensive, unnecessary, and will not work.  Defendants also contend that they do not understand some of the restoration measures.  Additionally, the Defendants complain that the United States did not consult with or coordinate with the Defendants in any manner in preparing the proposed order.  Defendants request the Court to reject the amended

2

modified restoration plan and order the United States to coordinate with the Defendants to come up with a new restoration plan.

Prior to and during the January 25, 2007, hearing, the Defendants' objections to the restoration plan centered primarily around their lack of financial resources to pay for experts to implement or complete the restoration measures and their good faith attempt to comply with the original restoration plan.  Taking these objections into consideration, the Court ordered the United States to tender a proposed amended modified restoration plan removing all provisions requiring the hiring of an engineer, professional wetland scientist or ecologist and set new deadlines for the completion of the plan.  The Court intended the United States to unilaterally prepare the amended order.  In fact, having addressed all of the Defendants' objections, the Court considered entering the order without a response from the Defendants. The Court certainly did not contemplate objections which should have been filed by Defendants in their original response to the Motion to Modify the Restoration Plan. Notwithstanding the untimeliness of the majority of Defendants' objections, the Court will address these objections.

First, Defendants object to the June 1, 2007 deadline for ordering wetland trees. Specifically, Defendants state that the Kentucky Division of Forestry, where the Defendants purchase their trees, turns off its coolers at the end of May and shreds what trees are left. According to Defendants, no trees will be available until January of 2008.  Defendants also state that in past years the ground is too wet in December to plant trees.  Finally, Defendants submit that natural regeneration would be an acceptable alternative to the planting of trees.

The Court rejects Defendants objections to this provision. Defendants have failed to provide any evidence that they cannot purchase the trees from another source by June 1, 2007 for delivery in November or December of 2007. For that matter, Defendants have not sufficiently demonstrated that they are unable to purchase trees from the Kentucky Division of Forestry for delivery in December of 2007. Therefore, Defendants should make a reasonable effort to purchase all of the seedlings by June 1, 2007, as set forth in the Plan. If the Cundiffs are unable to purchase the trees despite all good faith efforts, they shall communicate this fact to the EPA. If the parties agree at that time that a modification of the restoration plan is appropriate, they shall submit an agreed order to that effect. Otherwise, the EPA shall take whatever action is necessary to enforce the restoration plan.

Second, Defendants submit that they are unsure of what the EPA means by "earthen materials placed in the wetlands along the northern boundary of the northern tract." (Proposed Order at 2.) Defendants argue that there is no earthen material in that location. Additionally, Defendants contend that they are unsure of what the EPA means by "six permanent sampling transects in the planting areas" (Proposed Order at 4) or where they would be located.

Any confusion by the Defendants concerning the content and the implementation of the amended modified restoration plan can be discussed in-depth during the site visit/coordination meeting on June 18-20, 2007. At the coordination meeting, the EPA intends to (i) identify upland disposal area for the removal of woody debris and earthen material from the northern and southern tracts, as well as the sidecast material along the new

4

southern tract ditch; (ii) provide guidance and instruction with respect to the installation of culverts and low water dips at the western boundary of the northern tract; (iii) determine the proper elevation for the proposed earthen plug and culvert in the South Channel of the northern tract; and (iv) establishing sampling transects to facilitate the assessment of the survival rate of the newly planted trees. (United States' Amended Modified Restoration Plan at 4-5.) The amended modified restoration plan also provides for on-site supervision of the performance of certain restorative tasks. Additionally, the United States represents that it intends to provide the Defendants with a direct dial telephone number, facsimile number, and e-mail address of an EPA representative who can respond to any questions in a timely manner. (Id.) With the EPA's additional supervision and the opportunity for greater communication between the parties, any confusion by the Defendants at this point does not warrant removal of these restoration provisions.

Third, Defendants object to the required seventy percent survival rate of the trees. Defendants contend that the restoration measures set forth in the restoration plan will cause water to stand on top of the trees and kill them. The Court declines to remove this requirement from the restoration plan. The Court understands the Cundiffs' concern that if they implement the restoration plan as directed by the EPA and less than seventy percent of the trees survive, they may be forced to incur further expense to plant additional trees. The Cundiffs should document their compliance with the plan including their tree planting activities and any complications that may arise. In the event more than thirty percent of the trees fail to survive, and the EPA raises the issue, the Cundiffs should be prepared to present

to the Court their documented efforts to comply with the restoration plan.

Fourth, Defendants object to the removal of the woody debris along the northern boundary of the northern tract; removal of all fill material sidecast in the wetlands along the new ditch on the southern tract; installation of additional riprap at the point where the western ditch enters Caney Creek; the installation of 48-inch culverts at the western ditch on the northern tract and the construction of two low water dips in the area between the culverts; and construction of a 10-foot-long, 36-inch-wide culvert in the South Channel of the northern tract. (Defendants' Objections at 2-3.)  Defendants question the necessity of certain restoration measures arguing that some of the measures are unnecessary, too expensive, duplicative, and manifestly unfair.  Defendants' objections to these provisions of the amended modified restoration plan are not well taken.  Throughout this litigation, Defendants have repeatedly failed to present an alternative restoration plan.  Furthermore, Defendants failed to present any expert testimony at the hearing or in their post-hearing brief challenging the specifics of the modified restoration plan offered by the United States.  Finally, the United States represents that the restoration measures in the Amended Modified Restoration Plan can be performed by Defendants with the same equipment they used to dig ditches, uproot trees, and undertake other work at the site.

The Court's favorable ruling on the Defendants' original objections to the United States' Motion to Reinstate the Civil Penalties and to Modify the Restoration Plan should not be mistaken as an indication that the Court is not determined to require the Cundiffs' to restore the wetlands at the site.  The Court reminds the Defendants that their good faith

6

adherence to the amended modified restoration plan approved today is essential to avoid the imposition of the additional proposed requirements of hiring a wetland scientist or ecologist to oversee the restoration at the site and an engineer to design and implement the restoration measures.

Finally, Defendant George Rudy Cundiff objects to the imposition of the $25,000 civil penalty imposed by the Court. Defendant argues that the payment of the civil penalty will be a hardship on him in light of all of the extra work he is being asked to do. Due to Mr. Cundiff's repeated defiance, the Court originally assessed a civil penalty against Mr. Cundiff in the amount of $225,000. However, the Court suspended $200,000 of the civil penalty provided that Mr. Cundiff adequately implements the restoration plan. Given Mr. Cundiff's past non-compliance, the $25,000 civil penalty imposed by the Court is reasonable. Similarly, the additional work now required from Mr. Cundiff under the amended modified restoration plan is a result of Mr. Cundiff's own activities. Thus, Defendant's objection to the continued imposition of the $25,000 civil penalty is overruled.

## CONCLUSION

For the reasons set forth above, the Court adopts the amended modified restoration plan tendered by the United States. The Court shall enter an Order consistent with this Opinion.

cc: counsel of record

7