## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:01CV-6-M**

**UNITED STATES OF AMERICA**                                       **PLAINTIFF**

**vs.**

**GEORGE RUDY CUNDIFF and**
**CHRISTOPHER SETH CUNDIFF**                            **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by the United States to reinstate the suspended portion of the civil penalty and to modify the restoration measures against Defendants [DN 189]. On November 16, 2009, the Court conducted an evidentiary hearing. Fully briefed and argued, this matter is ripe for decision.

### I. BACKGROUND

This case arises out of violations of Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), by Defendants George Rudy Cundiff (hereinafter "Mr. Cundiff") and his son, Christopher Seth Cundiff. On January 10, 2005, this Court entered a permanent injunction enjoining Defendants from discharging dredged or fill material or any other pollutants into the waters of the United States. The Court ordered the Defendants to implement and fund the restoration plan tendered by the United States. The Court accessed a civil penalty in the amount of $225,000.00 against Mr. Cundiff, but suspended $200,000.00 of the civil penalty provided that Mr. Cundiff adequately implemented the restoration plan.

Faced with Mr. Cundiff's failure to comply with the original restoration plan, this Court issued an order on May 16, 2007, requiring Mr. Cundiff to implement an amended restoration plan. The Court denied the United States' request for reinstatement of the suspended portion of the civil

penalty at that time finding that the non-compliance did not appear defiant but rather resulted from his lack of understanding of "the actions necessary to complete the restoration plan." Similarly, the Court declined to order Mr. Cundiff to hire a professional wetland scientist to monitor the restoration of the site. Once again, the Court prohibited Defendants from engaging in landclearing or ditching in the wetlands "unless and until [the] EPA confirms in writing that the activity will not result in a discharge of dredged or fill material into the wetlands." On appeal, the Sixth Circuit Court of Appeals upheld the civil penalty and the Court's May 2007 amended restoration plan. See United States v. Cundiff, 555 F.3d 200, 204 (6th Cir. 2009).

On October 28, 2008, EPA's Senior Wetland Enforcement Expert Michael Wylie conducted a site visit of the Cundiff property. (Michael Wylie Decl. at ¶ 5.) Mr. Wylie represents that during his October 28, 2008, inspection he documented eight new categories of ditching and filling activities that had occurred on and around the site after the May 2007 Order. (Id. at ¶¶ 4-31.) As a result of this inspection, the United States filed a motion to reinstate the suspended $200,000.00 portion of the civil penalty against Mr. Cundiff, to impose additional corrective restoration measures designed to address Mr. Cundiff's latest unauthorized ditching and filling of the wetlands, and to require the Defendants to hire a competent wetland professional to oversee restoration of the site and to document and verify that the restoration is actually proceeding as ordered.

## II. VIOLATIONS

Michael Wylie testified that during his October 28, 2008, visit of the Cundiff property he observed eight new categories of ditching and filling activities that had occurred. Mr. Wylie testified that Cundiff dug several new ditches on and around the site, bulldozed fill material directly into Pond Creek, and constructed an eight-foot high levee along the eastern bank of the site's

southern tract. Additionally, Mr. Wylie also found that existing ditches at the site had been tripled in depth and were now draining the wetlands into Pond Creek. These activities are set forth at length in Mr. Wylie's affidavit. Mr. Wylie testified that Mr. Cundiff's expansion of existing ditches, digging of new ditches, and construction of a large levee harmed the wetlands by compromising the wetlands' hydrology and by reducing the water storage and filtration functions of the property.

In response, Mr. Cundiff testified that he did not construct any new ditches, but merely performed routine maintenance of the existing ditches on his property. Mr. Cundiff represented that he had been told my both federal and state officials that maintenance of the ditches on his property was appropriate under the amended restoration plan. Further, Mr. Cundiff, along with his experts, Jeff Selby and Dr. Terry Richardson of AST Environmental Group, testified that Mr. Cundiff believed that his current actions were necessary to remedy the wetlands' "excessive hydrology" to avoid the loss of newly planted trees.

Considering the witnesses' testimony and the pictures taken during the October 2008 site inspection, the Court finds that Mr. Cundiff's unauthorized activities documented in Mr. Wylie's affidavit constitute a violation of the Court's January 2005 permanent injunction [DN 111] and May 2007 amended restoration plan [DN 183] prohibiting ditching or land-clearing "unless and until EPA confirms in writing that the activity will not result in a discharge of dredged or fill materials into the wetlands." Further, a review of the photographs taken during the October 2008 site inspection demonstrate that Mr. Cundiff's characterization of his recent activity as merely maintenance of the ditches is not credible. In fact, applying Mr. Cundiff's definition of maintenance, the routine maintenance of a two-lane county road would result in its expansion to a major four-lane interstate. Instead of merely maintaining these ditches, Mr. Cundiff has greatly expanded and deepened the

network of ditches on the site. Accordingly, Mr. Cundiff's activity at the site was unauthorized and in clear violation of the Court's previous orders.

Having concluded that Mr. Cundiff has failed to comply with the permanent injunction and the May 2007 amended restoration plan, the Court must next address the appropriate remedies for his failure to comply with this plan.

### III. CIVIL PENALTY

In the original Findings of Fact and Conclusions of Law, the Court assessed a civil penalty against George Rudy Cundiff in the amount of $225,000.00 pursuant to 33 U.S.C. § 1319(d); however, the Court suspended $200,000.00 of the $225,000.00 civil penalty "provided that Cundiff adequately implements the restoration plan." (January 10, 2005, Findings of Fact and Conclusions of Law at 14.) The United States argues that in light of Mr. Cundiff's history of noncompliance and the significant new violations described above, the $200,000.00 suspended portion of the civil penalty should be reinstated.

After reviewing the testimony of Mr. Cundiff, along with experts presented by the parties, the Court finds that Mr. Cundiff's actions warrant reinstatement of at least a portion of the suspended civil penalty. The Court finds that the additional violations committed by Cundiff are serious. Mr. Wylie testified that Cundiff's activities significantly undermined the restoration efforts that have been underway at the site for the past two years. Mr. Wylie further testified that the deepening of all existing ditches and creation of new ditches compromised the wetlands' hydrology and reduced their ability to retain and treat acid mine runoff and other pollutants thereby directly impacting the quality of Pond and Caney Creeks. (See Wylie Affidavit at ¶ 8.) According to Mr. Wylie, the latest unauthorized activities are the most egregious that the EPA has documented to date

on this site. (Id. at 3.).

As discussed above, Cundiff's recent unauthorized activities constitute a violation of the permanent injunction and the amended restoration plan. For over 18 years, Cundiff has repeatedly defied the express orders and warnings of the federal and state agencies charged with enforcing the Clean Water Act. Cundiff has been informed on numerous occasions by government officials and this Court that this type of conduct violates the Clean Water Act and that he is not permitted to engage in unauthorized ditching and filling activities at the site. Feigning a concern for the survival of the recently planted trees, Cundiff once again disregarded the orders of this Court. Throughout this litigation, Cundiff has hidden behind his lack of understanding of the restoration plan to justify his unauthorized activity. However, the Court agrees with the United States that the latest unauthorized activity cannot be characterized as inadvertent or unintentional as evidenced by the photographs attached to Mr. Wylie's affidavit.

In light of Mr. Cundiff's recent unauthorized activities, reinstatement of the entire suspended civil penalty against him would be entirely appropriate. However, the Court's primary objective is the restoration of the wetlands at the site. The reinstatement of the entire suspended penalty would presumably impact Mr. Cundiff's financial ability to implement the restoration plan and to hire the required wetlands professional to oversee the project. For these reasons, the Court reinstates $25,000.00 of the $200,000.00 suspended civil penalty against George Rudy Cundiff. The remaining $175,000.00 suspended civil penalty will not be reinstated at this time provided that Mr. Cundiff adequately implements the restoration plan. The sum of $25,000.00 shall be paid in equal installments over three years.

## IV.  MODIFICATION OF THE RESTORATION PLAN

In light of Mr. Cundiff's newly unauthorized activities, the United States proposes additional remedial measures designed to restore the site to its pre-existing condition and to comply with all unsatisfied components of the May 2007 amended restoration plan.  The United States also requests the Court to require Mr. Cundiff to hire a competent wetland professional to oversee the restoration of the site and to document and to verify that the restoration is actually proceeding as ordered.

After reviewing the proposed modified restoration plan submitted by the United States and based on the findings set forth above, the Court will adopt those restoration measures proposed by the United States, including the requirement that Mr. Cundiff hire a competent wetland professional to oversee the restoration of the site and to submit the required documentation required under the restoration plan.  At the hearing, the United States objected to the utilization of AST Environmental Group whom Mr. Cundiff hired in connection with this current motion.  After hearing the testimony of both Mr. Selby and Dr. Richardson, the Court is satisfied that these experts are qualified and capable of overseeing the restoration of the site and submitting the required documentation under the restoration plan if Mr. Cundiff should so choose to employ them.

Finally, the proposed second amended restoration plan tendered by the United States indicates that the Defendants should "[p]lug (with earthen material) the large new ditch recently dug by Defendant on the *eastern bank* of Pond Creek, and armor it with rock." (emphasis added).  The Court is aware that there is a question as to whether the reference to the eastern bank is correct.  If, after further review of this issue, counsel believe that this portion of the restoration plan should be changed, the Court will entertain an appropriate motion at that time.

## V. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** as follows:

1. The motion by the United States to reinstate the suspended portion of the civil penalty [DN 189] is **granted in part**. The Court reinstates $25,000.00 of the suspended civil penalty against Defendant, George Rudy Cundiff. The sum of $25,000.00 shall be paid in equal installments over three years.

2. The motion by the United States to modify the restoration measures [DN 189] is **granted**. The Court adopts the second amended restoration plan tendered by the United States. The Court shall enter the second amended restoration plan by separate order.

cc: counsel of record